## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                        )
**Robert Smith, Jr.,**                                  )
                                                        )
      **Plaintiff,**                               )
                                                        )     **Civil No. 14-cv-00959 (APM)**
            **v.**                         )
                                                        )
**United States of America,**                           )
                                                        )
      **Defendant.**                               )
_____                 )

## MEMORANDUM OPINION

### I.     INTRODUCTION

In September 2011, Robert Smith, Sr., died while in the care of the Veterans Affairs Medical Center in Washington, D.C.  Before his passing, Smith executed paperwork—witnessed by three employees of the Medical Center—that left his personal property and life insurance benefits to his nieces.  Smith's son, Plaintiff Robert Smith, Jr., who inherited none of his father's property or assets, now brings this action claiming that the Medical Center's employees were negligent in acting as witnesses to his father's testamentary acts.  For the reasons explained below, Defendants' Motion to Dismiss is granted.

### II.    BACKGROUND

#### A.     Factual History

After a long history of battling various ailments, Robert Smith, Sr. ("Smith"), died at the Veterans Affairs Medical Center (the "Medical Center") in Washington, D.C., on September 13, 2011.  Shortly before his death, on August 22, 2011, Smith executed a Last Will and Testament in which he left all of his personal property to his nieces.  Pl.'s Mot. to Amend. the Compl., Ex. 3, ECF No. 19-3, at 3-5 [hereinafter Mot. to Amend.].  He also signed other paperwork designating

his nieces as the beneficiaries of two life insurance policies and a civil service retirement plan death benefit.  Compl., ECF No. 1, at 3-5; Mot. to Amend., Ex. 3 at 7.  Smith completed the paperwork while he was a patient at the Medical Center.  Mot. to Amend., Ex. 3 at 3-5, 11.  All three people who witnessed his testamentary acts—Lea Anderson, Keon Anderson, and Valerie Flowers (collectively the "Medical Center Employees")—were, at the time, employees of the Medical Center.  *Id.*

Smith's son, Plaintiff Robert Smith, Jr., received none of his father's personal property or assets.  On April 11, 2013, more than 19 months after his father's death, Plaintiff filed an administrative claim on a Standard Form 95 ("SF-95") with Defendant United States Department of Veterans Affairs.  Mot. to Amend., Ex. 3 at 1.  In his claim, Plaintiff accused the Medical Center Employees of "conspir[ing] and forg[ing] the signature of Robert Smith on a Last Will and Testament, on Designation of Beneficiaries for insurance benefits, death benefits, and retirement benefits."  *Id.*  He further accused the Medical Center Employees of assisting Smith's nieces to steal his father's wallet, keys, credit cards, and other personal property.  *Id.*  Plaintiff asserted that the "above described acts constituted fraudulent misrepresentation, conspiracy, collusion, forgery, malfeasance, theft and negligence."  *Id.*  After conducting an investigation, the Department of Veterans Affairs rejected Plaintiff's administrative claim on December 10, 2013.  *Id.*, Ex. 4, ECF No. 19-4.

## B.    Procedural History

On June 6, 2014, Plaintiff filed this action naming the Department of Veterans Affairs and the United States Office of Personnel Management ("OPM") as defendants.  Compl. ¶ 3.  In his Complaint, Plaintiff asserted five claims under the Federal Tort Claims Act ("FTCA").  Counts One through Four each alleged that the Medical Center Employees had acted negligently by

serving as witnesses to Smith's various testamentary acts. *Id.* at 2-5. In Count Five, brought only against OPM, Plaintiff claimed that "[OPM] has not responded to the Plaintiff's requests for information and has not paid death benefits to anyone." *Id.* ¶ 25.

On March 9, 2015, Defendants moved to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for, respectively, lack of subject matter jurisdiction and failure to state a claim. Mot. to Dismiss, ECF No. 16, at 1. Under Rule 12(b)(1), Defendants primarily asserted that Plaintiff had failed to exhaust his administrative remedies, which is a jurisdictional prerequisite to filing suit under the FTCA. *Id.* at 8-10. Specifically, Defendants contend that Plaintiff did not exhaust his remedies "because his claim to the Agency presented a wholly different set of facts, allegations, and claims than his Complaint filed in this Court." *Id.* at 8. Under Rule 12(b)(6), Defendants argued that, because Plaintiff had failed to allege that the Medical Center Employees owed him any duty, he could not maintain his negligence claims. *Id.* at 13-15.

Instead of filing an opposition to Defendants' motion, Plaintiff moved to amend his Complaint in several ways. *See generally* Mot. to Amend the Compl., ECF No. 19. First, to shore up his negligence claims, Plaintiff asked to add allegations that (1) the Medical Center Employees "had a duty to follow regulations and customs of the Medical Center which prohibited employees from signing and witnessing documents concerning the personal affairs of [its] patients," *id.*, Ex. 2, ECF No. 19-2, ¶ 12, and (2) he had "relied upon employees of the Medical Center to follow its regulations and customs," *id.* ¶ 12. Second, Plaintiff sought to name the Medical Center as a defendant and to assert against it a claim that it had failed to adequately train its employees as to alleged policies that prohibited them from witnessing acts and signing documents concerning patients' personal affairs. *Id.* ¶¶ 16-19. Third, Plaintiff wished to include the allegation that he

had "exhausted his administrative remedies." *Id.* ¶ 4.  Defendants opposed the Motion to Amend

on the ground that Plaintiff's proposed amendments were futile.  *See generally* Defs.' Opp'n to

Pl.'s Mot. to Amend, ECF No. 21.

## III.   STANDARDS OF REVIEW

The motions before the court require it to consider standards of review under

Rules 12(b)(1), 12(b)(6), and 15(b).  Those standards are as follows.

### A.   Motion to Dismiss under Rule 12(b)(1)

A motion filed under Rule 12(b)(1) imposes on a court "an affirmative obligation to ensure

that it is acting within the scope of its jurisdictional authority." *Grand Lodge of Fraternal Order*

*of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  Plaintiff bears the burden of proving

that the court has subject matter jurisdiction to hear his claims.  *See Lujan v. Defenders of Wildlife*,

504 U.S. 555, 561 (1992).  "For this reason, 'the [p]laintiff's factual allegations in the complaint .

. . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for

failure to state a claim." *Grand Lodge*, 185 F. Supp. 2d at 13-14 (citation omitted).

In analyzing a 12(b)(1) motion, a court need not limit itself to the complaint.  *Settles v. U.S.*

*Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005).  It "may consider such materials outside

the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the

case." *Scolaro v. D.C. Bd. of Elections and Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (citations

omitted); *see also Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992) ("[W]here

necessary, the court may consider the complaint supplemented by undisputed facts evidenced in

the record, or the complaint supplemented by undisputed facts plus the court's resolution of

disputed facts."  (citations omitted)).

### B.      Motion to Dismiss under Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The factual allegations in the complaint need not be "detailed"; however, the Federal Rules demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  If the facts as alleged fail to establish that a plaintiff has stated a claim upon which relief can be granted, a court must grant defendant's Rule 12(b)(6) motion.  *See Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.,* 922 F. Supp. 2d 56, 61 (D.D.C. 2013).

In evaluating a motion to dismiss under Rule 12(b)(6), the court must accept a plaintiff's factual allegations as true and "construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)).  The court need not accept as true "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "inferences . . . unsupported by the facts set out in the complaint," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

### C.      Motion to Amend Complaint under Rule 15(a)(2)

Under Federal Rule of Civil Procedure 15(a)(2), a "court should freely give leave [to amend] when justice so requires."  The Supreme Court has emphasized that Rule 15(a)'s "mandate

is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Id.* Denying leave to amend is "inconsistent with the spirit of the Federal Rules," and thus an abuse of discretion, *id.*, unless the court provides a sufficient reason for so doing, such as "futility of amendment, undue delay, bad faith, dilatory motive, undue prejudice, or repeated failure to cure deficiencies by previous amendments." *Boyd v. District of Columbia*, 465 F. Supp. 2d 1, 3 (D.D.C. 2006) (other citation omitted) (citing *Foman*, 371 U.S. at 182).

## IV.   DISCUSSION

### A.   Failure to Exhaust Administrative Remedies

The FTCA contains a claim presentment requirement that is a jurisdictional prerequisite to filing suit. *See* 28 U.S.C. § 2675(a); *GAF Corp. v. United States*, 818 F.2d 901, 917 (D.C. Cir. 1987) ("In order to establish jurisdiction under the Act, a claimant must provide the agency with notice of a claim . . . ."). Congress included the presentment requirement in the FTCA to "enable the agency to investigate and ascertain the strength of a claim . . . [and] to determine whether settlement or negotiations . . . are desirable." *Id.* at 920. To satisfy the requirement, a claimant must "file (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim." *Id.* at 919. The claimant need not, however, "substantiate [the claim] to the agency's satisfaction." *Id.* at 917.

Though satisfying the presentment requirement is hardly onerous, it does demand consistency between the facts the claimant presents to the agency and the facts she alleges in her complaint. A claimant "may not 'present one claim to the agency and then maintain suit on the basis of a different set of facts.'" *Williams v. United States*, 932 F. Supp. 357, 361 (D.D.C. 1996)

(quoting *Deloria v. Veterans Admin.*, 927 F.2d 1009, 1012 (7th Cir. 1991)).  The reason for that limitation is obvious.  The purpose of the presentment requirement is to enable an agency to investigate, evaluate, and settle a claim before litigation ensues.  Such purpose would be defeated if a claimant could present one set of facts to an agency but seek a liability finding based on a different set of facts in court.

In this case, Plaintiff has not met the presentment requirement.  The facts underlying the negligence claims in his Complaint differ sharply from the facts contained in his administrative claim.  In his Complaint, Plaintiff accuses the Medical Center Employees of "negligently" serving as witnesses to Smith's testamentary acts.  Compl. at 2-5.  According to Plaintiff, Medical Center policy prohibited the employees from acting in such a capacity.  Pl.'s Opp'n to Defs.' Mot. to Dismiss, ECF No. 22, at 9 [hereinafter Pl.'s Opp'n].[1]

In contrast, Plaintiff's administrative claim accuses the employees of committing intentional torts, if not criminal acts.  The SF-95 Plaintiff submitted to the agency alleges that the Medical Center Employees (1) "conspired and forged" Smith's signature on various testamentary documents and (2) "assisted and aided" his nieces in stealing his personal property.  Mot. to Amend., Ex. 3 at 1.  This presents a starkly different factual predicate than that alleged in the Complaint.  Whereas the administrative claim contends that Smith did not sign the documents in question—the Medical Center Employees forged the signatures, according to the SF-95—the Complaint's premise is that Smith *did* in fact himself execute the documents, but the employees were "negligent" in choosing to serve as witnesses to his acts.  Because of the significant differences in these factual scenarios, the presentment requirement bars Plaintiff from proceeding

---

[1] Technically speaking, Plaintiff's Opposition to Defendant's Motion to Dismiss ("Plaintiff's Opposition") is a reply brief to Defendant's Opposition to Plaintiff's Motion to Amend the Complaint.  *See* ECF No. 21.  Plaintiff then late-filed an "Opposition to Defendant's Original Motion to Dismiss" that incorporated Plaintiff's arguments from Plaintiff's Opposition, ECF No. 26, which the court accepted, Minute Order, June 26, 2015.

on his newly conceived negligence claims. *See Murphy v. United States*, 121 F. Supp. 2d 21, 27 (D.D.C. 2000) (dismissing the plaintiff's invasion of privacy claim for failure to exhaust because that claim "demand[ed] markedly different factual evidence than those of common law assault or negligence," which the plaintiff had advanced in his administrative claim); *cf. Pullen v. United States*, No. Civ. A. 96-1211 (RCL), 1997 WL 350003 (D.D.C. June 11, 1997), at *4 (denying a motion to dismiss where the factual difference between the administrative claim and the complaint was minor).

Plaintiff contends he did not run afoul of the presentment requirement because his SF-95 listed "negligence" among the types of conduct committed by the Medical Center's employees. Pl.'s Opp'n at 5. He argues: "The *presentment requirement* does not require that a claim based on negligence, and a claim based on intentional acts, be submitted separately. Neither does it prohibit a claim from including both intentional acts and negligent acts." *Id.* Plaintiff is correct insofar as he asserts that the presentment requirement does not require a claimant to list every conceivable cause of action in an administrative claim in order to reserve those claims for a federal court litigation. "If the claim 'fairly apprises the government of the facts leading to the claimant's injury, new theories of why those facts constitute tortious conduct can be included in a federal court complaint.'" *Bush v. United States*, 703 F.2d 491, 494 (5th Cir. 1983) (quoting *Rise v. United States*, 630 F.2d 1068, 1071 (5th Cir. 1981)) (cited approvingly in *GAF Corp.*, 818 F.2d at 919 n.106).

But merely identifying a theory of liability—in this case, "negligence"—by name in an administrative claim is not enough to preserve it for a federal court complaint. Although a claimant need not specify a particular theory of liability for every claim, she must assert *facts* such that the agency can assess the claim for settlement. *See GAF*, 818 F.2d at 921 (rejecting interpretation of

the presentment requirement as "demand[ing] that the claimants specify particular theories of liability for each of the underlying claims").  Thus, whether a claimant has satisfied the presentment requirement depends on the facts set forth in the administrative claim, not on the identified possible theories of liability.

Here, Plaintiff's inclusion of "negligence" on his SF-95 failed to provide the requisite notice.  Within a text box titled "Basis of Claim,"[2] Plaintiff wrote:  "The *above described acts* constituted fraudulent misrepresentation, conspiracy, collusion, forgery, malfeasance, theft and *negligence*."  Mot. to Amend., Ex. 3 at 1 (emphasis added).  As discussed, those "above described acts" were the Medical Center's Employees' alleged forgery of Smith's signature and their supposed aid to his nieces in stealing his personal property.  *Id.*  Nothing in the SF-95 adequately apprised the agency of Plaintiff's alternative factual basis for a claim:  that the agency employees merely witnessed Smith executing the documents in question and in so doing violated Medical Center policy.

Plaintiff also contends that, in addition to identifying "negligence" on his SF-95, he placed the agency on notice of his negligence claim by attaching ten pages of various documents to the SF-95.  The court disagrees.  The documents attached to the SF-95 include copies of:  (1) Plaintiff's retainer agreement with his counsel; (2) Smith's Last Will and Testament; (3) a letter from OPM to Smith's niece about how to apply for death benefits; (4) a letter from OPM to Plaintiff rejecting his request for death benefits and identifying Smith's nieces as the appropriate beneficiaries; and (5) four pages of Smith's medical records.  *See* Mot. To Amend, Ex. 3 at 2-11.  None of these materials, even read together with the SF-95, sufficiently put the agency on notice about the

---

[2] The "Basis of Claim" text box contains instructions that emphasize the importance of providing a detailed factual basis for the claim.  *See* Mot. to Amend., Ex. 3 at 1 ("State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the causes thereof.").

negligence claims now advanced in the Complaint.   None of the documents imply, let alone expressly state, that the Medical Center Employees merely served as witnesses to Smith's testamentary acts.   If anything, the attached materials reinforce the allegation of intentional misconduct stated in the SF-95, as they draw attention to Smith's nieces and his supposedly compromised medical condition at the time he executed the relevant documents.   In short, because the SF-95 and the documents attached to it did not adequately apprise the agency of the negligence claims that Plaintiff now asserts in his Complaint, this court lacks subject matter jurisdiction to consider them.[3]

To be clear, the court's ruling that it lacks subject matter jurisdiction pertains to all of Plaintiff's negligence claims, including his claim against OPM.   Defendant has not argued that the court lacks jurisdiction with respect to the OPM claim because of Plaintiff's failure to exhaust. *See* Def.'s Opp'n to Pl.'s Mot. to Amend at 5 (arguing only that the proposed amended complaint "still makes no reference to negligence (or any other legal theory of liability)").   The court, however, has an independent obligation to determine whether subject-matter jurisdiction exists, even if not specifically raised by Defendant. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006) ("[C]ourts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.").   Plaintiff has neither alleged nor supplied any evidence establishing that he submitted an administrative claim to OPM before filing suit.   The court therefore lacks subject matter jurisdiction as to the claim against OPM, as well.

---

[3] Because the court has construed Plaintiff's Complaint as asserting claims of negligence, the court does not reach Defendant's argument that Plaintiff has in actuality pled claims for negligent misrepresentation and deceit as to which the United States has not waived immunity under the FTCA. *See* Mot. to Dismiss at 10-12.

### B.     Failure to State a Claim

Defendant also argues that Plaintiff's claims must be dismissed under Rule 12(b)(6) because he has failed to sufficiently allege claims for negligence.   To establish a claim for negligence, a plaintiff must allege that (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; and (3) the defendant's acts proximately caused the plaintiff to suffer an injury.   *See Wash. Metro. Area Transit Auth. v. Ferguson*, 977 A.2d 375, 377 (D.C. 2008); *see also Tarpeh-Doe v. United States*, 28 F.3d 120, 123 (D.C. Cir. 1994) ("Tort liability under the FTCA is determined according to the law of the state where the alleged acts or omissions occurred.").   Defendant contends that Plaintiff has failed to allege facts that would support the existence of a duty owed to Plaintiff.   Mot. to Dismiss at 13-14.   Although the court already has found that it lacks subject matter jurisdiction to hear Plaintiff's claims, the court agrees with Defendant and also dismisses the Complaint on the alternative ground that it fails to state a claim of negligence.

The existence of a legal duty owed by the defendant to the plaintiff is an essential element of a negligence claim.   *Wash. Metro. Area Transit Auth.*, 977 A.2d at 377.   The plaintiff "must specify a negligent act and 'characterize the duty whose breach might have resulted in negligence liability.'"   *District of Columbia v. White*, 442 A.2d 159, 162 (D.C. 1982) (quoting *Kelton v. District of Columbia*, 413 A.2d 919, 922 (D.C. 1980)).   The description of the duty cannot, however, "rest on mere 'conclusory assertions.'"   *Simms v. District of Columbia*, 699 F. Supp. 2d 217, 227 (D.D.C. 2010) (quoting *White*, 442 A.2d at 162).

Plaintiff asserts that he was owed a duty as a *potential* beneficiary of his father's estate based on "a policy at [the Medical Center] that employees shall not witness any document that is going to be used outside the hospital."   Pl.'s Opp'n at 9.   According to Plaintiff, although this

11

"policy" is nowhere committed to writing, it is taught "during training of employees" and "echoed in The Department of Veteran[s] Affairs, Mission Statement, which states that employees are required to report to the Office of Inspector General employees [who] perform serious improper practices and theft by deception that results in damage or loss to another." *Id.*

Defendants vigorously dispute the existence of such a policy and Plaintiff's characterization of the Mission Statement. *See* Def.'s Reply to Pl.'s Opp'n, ECF No. 23, at 11. The court, however, need not wade into the debate. Even assuming that such an internal policy exists, it does not create a duty in favor of the public in general or in favor of potential beneficiaries, such as Plaintiff. *See Kugel*, 947 F.2d at 1507-08 (D.C. Cir. 1991) (holding that violations of "intra-office" manuals do not "create a duty in favor of the general public"; alleged violation of Department of Justice (DOJ) internal guidelines did "not make out a discrete negligence claim under the FTCA" (citing *Schweiker v. Hansen*, 450 U.S. 785 (1981))); *Hatfill v. Ashcroft*, 404 F. Supp. 2d 104, 120-21 (D.D.C. 2005) (holding that an alleged violation of DOJ regulations concerning disclosure of information did not give rise to a FTCA claim); *see also Schweiker*, 450 U.S. at 789 (holding that a Social Security Administration claims manual "has no legal force"); *Sloan v. Dep't of Hous. & Urban Dev.*, 231 F.3d 10, 18 (D.C. Cir. 2000) (holding that agency employees' alleged violation of internal audit guidelines did not support a due process violation).[4] Therefore, because Plaintiff has failed to allege that the Medical Center Employees owed him a duty, Plaintiff's negligence claims must be dismissed.

---

[4] The court also has looked at whether, under common law, a witness to a testamentary act owes a duty to potential beneficiaries. No such duty appears to exist. At most, a witness has a "duty to inquire into the competency of the maker of the will." *Thompson v. Smith*, 103 F.2d 936, 940 (D.C. Cir. 1939). However, the court has not found, and Plaintiff has not cited, any authority holding that such duty flows to potential beneficiaries and that a breach of such duty gives rise to a claim for negligence.

The same conclusion pertains to Plaintiff's claim of negligence based on OPM's alleged conduct. Plaintiff has not alleged any facts that would establish OPM owed him a duty. *See* Compl. ¶¶ 23-25. And, even if he has alleged a duty, he has not alleged OPM breached it. *See id.* ¶¶ 23, 25 (alleging that "Plaintiff requested [that OPM] not pay the death benefits of his father" and that OPM "*has not paid* death benefits to anyone") (emphasis added).

### C.    Motion to Amend

Finally, the court denies Plaintiff's Motion to Amend because permitting amendment of the Complaint would be "futile." "Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss." *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996). The court has had the benefit of reviewing Plaintiff's proposed Amended Complaint. *See* Mot. to Amend., Ex. 2. None of his proposed amendments would enable him to survive a motion to dismiss.

Count One of the Amended Complaint largely restates and consolidates in a single count Plaintiff's negligence claims, which arise from the Medical Center Employees' witnessing of Smith's testamentary acts. *Id.* ¶¶ 11-15. Count Three restates Plaintiff's negligence claim arising from OPM's alleged misconduct. *Id.* ¶¶ 20-23. None of Plaintiff's proposed amendments cure the defects discussed above.

Count Two of the Amended Complaint seeks to join the Medical Center itself as a defendant and to assert against it a claim for negligent "failure to train." *Id.* ¶¶ 16-19. But Plaintiff's new claim suffers from the same fatal deficiency as his other negligence claims: Plaintiff failed to administratively exhaust the new claim. The SF-95 does not supply any facts that would apprise the Veterans Administration of a claim asserting that Plaintiff's injuries were proximately caused by the Medical Center's negligent training of its employees.

Further, Plaintiff's proposed Count Two would not survive a motion to dismiss for a second reason. Under 28 U.S.C. § 2680(a)—also known as the "discretionary function exception" to the FTCA—the federal government is immune from liability for agents' decisions that "'involve an element of judgment or choice.'" *United States v. Gaubert*, 499 U.S. 315, 323 (1991) (quoting *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 534 (1988)). "In this circuit, federal government hiring and employee supervision decisions are generally held to 'involv[e] the exercise of political, social, or economic judgment,' and therefore, to fall with the scope of the United States' sovereign immunity." *Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 82 (D.D.C. 2005) (quoting *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997)). That immunity encompasses decisions about training employees. "The extent of training with which to provide employees requires consideration of fiscal constraints, public safety, the complexity of the task involved, the degree of harm a wayward employee might cause, and the extent to which employees have deviated from accepted norms in the past." *Burkhart*, 112 F.3d at 1217. In short, because Plaintiff's proposed failure-to-train claim against the Medical Center rests on "the exercise of political, social, or economic judgment," *id.*, Defendant is immune from suit. Permitting Plaintiff to add such a claim therefore would be futile.

## V.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is granted and Plaintiff's Motion to Amend the Complaint is denied. A separate Order accompanies this Memorandum Opinion.

Dated: January 29, 2016

Amit P. Mehta
United States District Judge